# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00279-CR

**Timothy Harper, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. 3022559, HONORABLE CHARLES F. BAIRD, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury convicted appellant Timothy Harper of the offense of aggravated assault with a deadly weapon. *See* Tex. Pen. Code Ann. § 22.02(a)(2) (West Supp. 2006). Punishment was assessed at eight years' confinement. In three issues on appeal, Harper contests the legal and factual sufficiency of the jury's deadly weapon finding and asserts that the district court erred by not instructing the jury on the definitions of various standards of proof. We will affirm.

### BACKGROUND

The jury heard evidence that, at approximately 1:30 a.m. on November 15, 2002, Harper assaulted Joseph Hanson with a knife. Hanson testified that he was "hanging out" with some of his friends outside their fraternity house when Harper and Jason Cavitt, two homeless men,

walked by the house. Hanson observed one of the men drop a piece of trash in the yard and asked him twice to pick it up. As Cavitt turned around to pick up the trash, Harper told Cavitt that he didn't have to "pick up the [expletive] trash." Becoming irritated, Hanson then repeated his request, at which point Harper turned around and approached Hanson. When asked to describe how Harper approached him, Hanson testified:

A:  I can describe it as—I would classify it as an aggressive walk.

Q:  And how so?

A:  It was very intent. There is a look on his face of a definite intention to walk towards me at a quick pace that would give me the idea that it was an aggressive—a move of aggression.

Q:  What did you think was about to happen?

A:  From my interpretation, that some sort of fight was about to occur.

. . .

Q:  When he was coming at you, could you see his hands?

A:  Not clearly.

. . .

Q:  And as he's walking towards you and you can't see his hands, what happened next?

A:  He continued to walk towards me. And as he approached me within about three feet, his right hand came up in a sort of upward punching motion, at which point he hit me in the chest and knocked me back. As he drew his hand away, I noticed a metal object in his right hand as he pulled it away.

2

Hanson described the object as having "a metallic shape like a small knife you'd have in your kitchen, like a paring knife."

After Hanson felt the blow to his chest, he "immediately felt a warm sensation" on his chest, looked down, and noticed a "growing pool of blood" on his shirt. Hanson then ran into the house and his friends helped tend to the wound. Patrick Birdsong, a fraternity member who witnessed the incident, testified that Harper and Cavitt calmly "walked away" from the scene. Cavitt testified that as he and Harper walked away, he saw Harper throw the knife over a fence into someone's backyard. The knife was never recovered, although a picture of a similar knife was admitted into evidence for demonstrative purposes.

EMS and police officers were called to the scene, and Hanson was transported to the emergency room at Brackenridge Hospital. Hanson testified that it "was very difficult to get the bleeding to stop" and that the doctors had to close his wound with four staples. Hanson explained that he had to dress the injury at least once a day because it would regularly "ooze" blood and black fluid for six weeks after the assault. Hanson testified that, over a year and a half after the incident, there remained visible scar tissue and numbness in the muscles surrounding the wound.

Harper was apprehended and charged with the offense of aggravated assault with a deadly weapon. The jury found him guilty and punishment was assessed at eight years' confinement. This appeal followed.

## DISCUSSION

**Legal and factual sufficiency**

In his first and second issues, Harper asserts that the evidence is legally and factually

3

insufficient to support the jury's deadly weapon finding. Specifically, Harper contends that the evidence is insufficient to prove that the knife used in the assault was a deadly weapon because "the possibility of serious bodily injury or death was based entirely upon hypothetical circumstances."

When there is a challenge to the legal sufficiency of the evidence to sustain a criminal conviction, we consider whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *See Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981). It is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). We consider even erroneously admitted evidence. *Id*. The jury is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). Reconciliation of any conflicts in the evidence is within the exclusive province of the jury. *Id*. The jury is free to accept or reject any or all of the evidence presented by either party. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

In a factual sufficiency review, we view the evidence in a neutral light and will set aside the verdict only if the supporting evidence is so weak that the verdict is clearly wrong or the contrary evidence is so strong that the jury could not have found all the elements of the crime beyond

4

a reasonable doubt. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). A verdict is clearly wrong and unjust if the "jury's finding is 'manifestly unjust,' 'shocks the conscience,' or 'clearly demonstrates bias.'" *Id*. (quoting *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997)). All the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Although due deference must be accorded the fact-finder's determinations, particularly those concerning the weight and credibility of the evidence, the reviewing court may disagree with the result in order to prevent a manifest injustice. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). The evidence will be deemed factually insufficient to sustain the conviction if the proof of guilt is too weak or the contrary evidence is too strong to support a finding of guilt beyond a reasonable doubt. *See id*. at 11.

In order to establish the use of a deadly weapon during the commission of an offense, the State must show that the defendant used a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury, or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. Tex. Pen. Code Ann. § 1.07(a)(17) (West Supp. 2006). The penal code defines "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id*. § 1.07(a)(46).

A knife is not a deadly weapon per se. *See Robertson v. State*, 163 S.W.3d 730, 732 (Tex. Crim. App. 2005); *Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991). However, a knife may become a deadly weapon depending on the manner in which the actor uses it:

5

> The provision's plain language does not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury. The placement of the word "capable" in the provision enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force.

*McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000).

Factors to be considered in determining whether a knife is intended to be used as a deadly weapon include: (1) the distance between the accused and the victim; (2) threats or words used by the defendant; (3) the size and shape of the weapon; (4) the weapon's ability to inflict death or serious injury; and (5) the manner in which the defendant used the weapon. *Bailey v. State*, 46 S.W.3d 487, 491 (Tex. App.—Corpus Christi 2001, pet. ref'd); *Billey v. State*, 895 S.W.2d 417, 420-21 (Tex. App.—Amarillo 1995, pet. ref'd). Also, an intent to inflict serious bodily injury or death may be shown by evidence of assertive conduct by an attacker. *Ortiz v. State*, 993 S.W.2d 892, 894 (Tex. App.—Fort Worth 1999, no pet.). Additionally, the jury may consider the nature, location, and severity of the wounds inflicted. *Garcia v. State*, 17 S.W.3d 1, 5 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd). The actual knife used in the commission of an offense need not be introduced into evidence if a witness is able to testify about the knife and the manner in which it was used. *Billey*, 895 S.W.2d at 420. Either expert testimony or lay testimony may be sufficient to support a deadly weapon finding. *English v. State*, 647 S.W.2d 667, 668-69 (Tex. Crim. App. 1983); *Bailey*, 46 S.W.3d at 492.

6

There is sufficient evidence in the record to support the jury's deadly weapon finding. First, Harper's assertive conduct suggests that he intended to use the knife as a deadly weapon. Hanson testified that Harper walked "aggressively" towards him with a "definite intention" to "fight" and, once Harper was "within about three feet" from Hanson, Harper's right hand "came up in a sort of upward punching motion," stabbing Hanson in the chest. Hanson's testimony was corroborated by Birdsong, Cavitt, and Patrick Wigle, another fraternity member who witnessed the incident. Birdsong testified that Harper "basically picked up his arm and just hit him in the chest . . . it wasn't like he was throwing his fist at him like a punch. It was more like a stabbing motion." Cavitt testified that, although he did not see Harper stab Hanson, he saw Harper "run up" to Hanson. Wigle testified that when Harper walked "swiftly" towards Hanson, he thought "there was about to be a fight." Wigle further testified that Harper was "the aggressor" and got "right up in Joe's face" before he stabbed him.

Second, there was testimony indicating that the knife used in the assault was capable of producing death or serious bodily injury. Travis County deputy medical examiner Dr. Elizabeth Peacock reviewed Hanson's medical records and testified to the extent of his injuries. Peacock testified that Hanson suffered a hematoma or bruise in his right pectoral muscle. Although this injury was not serious, Peacock testified that it could have been, because a stab wound to the chest could result in serious damage to several major arteries, the heart, and the lungs, all of which are in the chest area:

Q: It did not cause serious bodily injury; is that right?
A: Correct.

7

Q: All right. But in the manner of its use, was it capable of causing serious bodily injury?

A: Certainly.

Q: And is that because the knife was inserted into his body in the chest where there are several major blood vessels and major organs that are nearby?

A: Yes.

Peacock also testified that she had seen two victims die from stab wounds in the area of Hanson's injury.

Seizing upon Peacock's testimony that Hanson's actual injury was not serious or life-threatening, Harper argues that the knife was only "hypothetically" capable of producing death or serious bodily injury. Citing this Court's opinions in *Rodriguez v. State*, 31 S.W.3d 772 (Tex. App.—Austin 2000), *aff'd*, 104 S.W.3d 87 (Tex. Crim. App. 2003), and *Johnston v. State*, 115 S.W.3d 761 (Tex. App.—Austin 2003), *aff'd*, 145 S.W.3d 215 (Tex. Crim. App. 2004), Harper contends that a deadly weapon finding cannot be premised on a hypothetical possibility that a weapon is capable of producing death or serious bodily injury.

In *Rodriguez*, the State attempted to prove that cocaine was a deadly weapon because "cocaine is a very lethal substance." 31 S.W.3d at 778. In *Johnston*, the State attempted to prove that a lit cigarette, applied to a child's palm, was a deadly weapon because of a lit cigarette's "inherent potential" to cause serious bodily injury. 115 S.W.3d at 763. In both cases, this Court found that there was insufficient evidence to support a deadly weapon finding because "an alleged deadly weapon's capability of causing death or serious bodily injury in the manner of its use must

be evaluated in light of the facts that actually existed when the felony was committed." *Id*. at 764; *Rodriguez*, 31 S.W.3d at 779.

In this case, however, the facts that existed when the felony was committed do support a deadly weapon finding. The alleged weapon was a knife. Dr. Peacock's testimony clearly establishes that the knife was capable of causing death or serious bodily injury because of the manner in which Harper used it—to stab Hanson in his chest, in close proximity to major arteries, the heart, and the lungs.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could find beyond a reasonable doubt that the knife Harper used in the assault was capable of causing death or serious bodily injury. We reach the same conclusion considering all the evidence in a neutral light. Harper produced no evidence controverting Dr. Peacock's testimony, and it is undisputed that Harper assaulted Hanson with a knife. The evidence was legally and factually sufficient to support a deadly weapon finding. We overrule Harper's first and second issues.

**Definitions of standards of proof**

In his third issue, Harper contends that the district court erred by failing to instruct the jury on the definitions of various standards of proof, including the "beyond a reasonable doubt" standard. We review the district court's decision to include or exclude definitions of "beyond a reasonable doubt" in the jury charge for abuse of discretion. *See Woods v. State*, 152 S.W.3d 105, 115 (Tex. Crim. App. 2004).

The district court instructed the jury in its charge that the burden of proof was on the State to prove guilt "beyond a reasonable doubt." Harper wanted the district court to go further and

9

define the "beyond a reasonable doubt" standard in accordance with the definition provided in *Geesa v. State*, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991). The State objected to this request. When the district court declined to provide such a definition, Harper requested definitions of lesser standards of proof, specifically "preponderance of the evidence" and "clear and convincing evidence," in order to inform the jury that the "beyond a reasonable doubt" standard "is not these two standards and it exceeds these two standards." The State again objected and the district court overruled Harper's request.

In *Paulson v. State*, the court of criminal appeals overruled *Geesa* and held that trial courts were no longer required to instruct juries on the definition of "beyond a reasonable doubt." 28 S.W.3d 570, 573 (Tex. Crim. App. 2000). The court acknowledged that "if both the State and the defense were to agree to give the *Geesa* instruction to the jury, it would not constitute reversible error for the trial court to acquiesce to their agreement." *Id*. However, the court concluded that the "better practice is to give *no* definition of reasonable doubt *at all* to the jury." *Id*. (emphasis added). The court explained that "[i]t is ill-advised for us to require trial courts to provide the jury with a redundant, confusing, and logically-flawed definition when the Constitution does not require it, no Texas statute mandates it, and over a hundred years of pre-*Geesa* Texas precedent discourages it." *Id*.

Defining lesser standards of proof in relation to the "beyond a reasonable doubt" standard is simply an indirect attempt to define the "beyond a reasonable doubt" standard. We have not found, and Harper has not cited, any case holding that a trial court errs in declining to provide such a definition. Although we can find no case addressing this specific issue, we believe that providing

10

a definition that compares the "beyond a reasonable doubt" standard to lesser standards of proof applicable in civil cases has the potential to confuse a jury even more than a direct definition could. We hold that the district court did not abuse its discretion in declining to include such a definition in the jury charge. We overrule Harper's third issue.

## CONCLUSION

Having overruled Harper's issues on appeal, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Waldrop

Affirmed

Filed:  November 3, 2006

Do Not Publish