# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-99-00591-CR

**Johnny Rodriguez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR99-025, HONORABLE GARY L. STEEL, JUDGE PRESIDING

A jury found appellant Johnny Rodriguez guilty of delivering cocaine to a minor. *See* Tex. Health & Safety Code Ann. § 481.122 (West Supp. 2000). The jury assessed punishment, enhanced by a previous felony conviction, at imprisonment for sixty years and a $10,000 fine. We will modify the judgment of conviction to delete the affirmative finding that Rodriguez used a deadly weapon in the commission of the offense and affirm the judgment as modified.

Rodriguez's daughter, K.R., testified that on September 9, 1998, when she was fourteen years old, she went to the house her father shared with his mother, K.R.'s grandmother. Rodriguez and K.R. went to his bedroom where Rodriguez produced a "twenty" of cocaine.[1] Rodriguez placed the cocaine on the top of a speaker, chopped it with a razor blade, and divided it into lines. Then, using a rolled up dollar bill, K.R. inhaled the cocaine as Rodriguez watched.

---

[1] K.R. testified that a "twenty" was $20 worth of cocaine, or about enough to fill a thimble.

Later that day, K.R. gave her mother, Linda Watts, four dollars to purchase gasoline.[2] One of the bills was the one K.R. had used to inhale the cocaine. Watts noticed some white powder on the bill. When she tasted it, it made her tongue numb. Suspecting the powder was cocaine, Watts confronted K.R., who revealed what had happened. A urine specimen taken from K.R. the next day tested positive for cocaine.

### Sufficiency of Evidence

Rodriguez contends the evidence is legally insufficient to support the jury's finding that he delivered cocaine to K.R. The question presented is whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981).

Rodriguez first argues that K.R. was an accomplice witness, and that her testimony was not adequately corroborated. *See* Tex. Code Crim. Proc. Ann. art. 38.14 (West 1979) (accomplice witness rule). Rodriguez relies on the opinion in *Blake v. State*, 971 S.W.2d 451, 461 (Tex. Crim. App. 1998), in which the juvenile exception to the accomplice witness rule was abolished.

The test for determining whether a witness is an accomplice under article 38.14 is whether the witness could be prosecuted under the same indictment by which the accused was charged. *See Gamez v. State*, 737 S.W.2d 315, 322 (Tex. Crim. App. 1987); *Reyna v. State*, 22

---

[2] Rodriguez and Watts were divorced. Both lived in New Braunfels. K.R. lived with her mother, but often visited her father.

S.W.3d 655, 659 (Tex. App.—Austin 2000, no pet.). It is an affirmative defense to prosecution for delivering a controlled substance to a minor that the actor was younger than eighteen years of age. *See* Tex. Health & Safety Code Ann. § 481.122(b)(1) (West Supp. 2000). Thus, while there is no longer a blanket exception to the accomplice witness rule for juveniles, K.R. could not be successfully prosecuted for the offense for which Rodriguez was indicted and therefore was not an accomplice witness.

Rodriguez further argues that the State failed to prove that he delivered the cocaine to K.R. by actual transfer, as alleged in the indictment. *See* Tex. Health & Safety Code Ann. § 481.002(8) (West Supp. 2000) (delivery means actual or constructive transfer, or offer to sell). He refers us to the holding that "an actual transfer . . . contemplates the manual transfer of property from the transferor to the transferee." *Heberling v. State*, 834 S.W.2d 350, 354 (Tex. Crim. App. 1992). Rodriguez construes "manual transfer" to mean that the transferor must physically hand the contraband to the transferee. In this case, the evidence shows that Rodriguez placed the cocaine on a flat surface, from which K.R. inhaled it. Thus, argues Rodriguez, the State did not prove an actual transfer.

Rodriguez misconstrues the meaning of "manual transfer," as the opinion in *Nevarez v. State*, 767 S.W.2d 766 (Tex. Crim. App. 1989), demonstrates. In that case, the defendant's co-party shoved a bag of marihuana from the front of a pickup truck bed to the rear, where it was handled and examined by an undercover officer. *See id.* at 767. The court held that this evidence was sufficient to prove an actual transfer of the marihuana. *See id.* at 768. The facts in the present cause are analogous to *Nevarez*. Rodriguez manually placed the cocaine within K.R.'s reach. She took

possession of it by inhaling it, thereby completing the delivery. The evidence is legally sufficient to prove delivery by actual transfer. Point of error three is overruled.

Rodriguez also contends the evidence is factually insufficient to prove delivery by actual transfer. The evidence regarding the nature of the delivery was uncontradicted, and Rodriguez's argument in support of this contention is merely a restatement of the argument discussed in the two preceding paragraphs. A neutral review of all the evidence does not convince us that the proof of guilt is so obviously weak or so greatly outweighed by contrary proof as to undermine confidence in the jury's determination. *See Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Point of error four is overruled.

**Extraneous Offenses**

In his seventh point of error, Rodriguez contends the district court erroneously admitted extraneous offense evidence. K.R. testified that Rodriguez first gave her cocaine in January 1998, and that he subsequently gave her cocaine on twenty to thirty occasions between January and September. One of K.R.'s classmates testified that she saw Rodriguez give K.R. cocaine once during the summer of that year. Rodriguez urges that this testimony had no relevance other than character conformity, that is, to prove his bad character in order to show action in conformity therewith. *See Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1991) (op. on reh'g); Tex. R. Evid. 404(b). He further argues that if these extraneous offenses were relevant apart from character conformity, this relevance was substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403.

4

An extraneous offense is an act of misconduct that is not shown in the charging instrument. *See Rankin v. State*, 953 S.W.2d 740, 741 (Tex. Crim. App. 1996). The indictment in this cause alleged that appellant delivered cocaine to K.R. "on or about" September 9, 1998. When the indictment alleges that a crime occurred on or about a particular date, the State may present evidence of the offense being committed at any time prior to the filing of the indictment and within the limitations period. *See Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997). The testimony of which Rodriguez complains was not evidence of extraneous offenses, but rather evidence of the repeated commission of the offense alleged in the indictment. Rodriguez was entitled to require the State to elect the occurrence on which it sought to rely for conviction, but in the absence of a request for an election there was no error in admitting the challenged testimony. *See Worley v. State*, 870 S.W.2d 620, 622-23 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd); *see also Crawford v. State*, 696 S.W.2d 903, 905-07 (Tex. Crim. App. 1985). Point of error seven is overruled.

### Enhancement of Punishment

In points of error five and six, Rodriguez contends the evidence is legally and factually insufficient to support the jury's finding that he had been previously convicted of a felony. *See* Tex. Penal Code Ann. § 12.42(b) (West Supp. 2000). The enhancement paragraph alleged that appellant was convicted of attempted aggravated robbery on July 26, 1976, in the Comal County district court, in cause number 7925. To prove this previous conviction, the State introduced a penitentiary packet that was linked to Rodriguez by his fingerprints. The exhibit contains a judgment reflecting that Rodriguez was convicted of the offense alleged, on the date alleged, in the court alleged, but in cause

5

number 7625. The exhibit also contains the corresponding sentence, which bears cause number 7925. Rodriguez's challenge to the sufficiency of the evidence is based on the discrepancy with respect to the cause number.

To be fatal, a variance between the pleading and the proof regarding a previous conviction used to enhance punishment must be both material and prejudicial to the defendant. *See Hall v. State*, 619 S.W.2d 156, 157 (Tex. Crim. App. 1980); *Plessinger v. State*, 536 S.W.2d 380, 381 (Tex. Crim. App. 1976). Rodriguez does not allege or show that he was misled, surprised, or unable to determine the previous conviction the State sought to prove. There is no fatal variance in this cause. *See Cole v. State*, 611 S.W.2d 79, 82 (Tex. Crim. App. 1981) (cause number 87954 alleged, cause number 87594 proved; no fatal variance); *Straughter v. State*, 801 S.W.2d 607, 611 (Tex. App.—Houston [1st Dist.] 1990, no pet.) (cause number 494,316 alleged, cause number 474,316 proved; no fatal variance). Points of error five and six are overruled.

**Deadly Weapon Finding**

The State gave notice in the indictment that it would seek a finding that Rodriguez "used a deadly weapon, to-wit: cocaine" during the commission of the alleged offense. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West Supp. 2000).[3] The deadly weapon question was submitted to the jury in a special issue, and the jury's affirmative finding is reflected in the district court's judgment. In points of error one and two, Rodriguez contends the evidence is legally and

---

[3] Article 42.12, section 3g(a)(2) provides that an affirmative finding shall be made "when it is shown that a deadly weapon as defined in Section 1.07, Penal Code, was used . . . during the commission of a felony offense . . . and that the defendant used . . . the deadly weapon . . . ."

factually insufficient to sustain the finding that he used the cocaine as a deadly weapon during the commission of this offense.

We are cited to no opinion discussing whether, in a prosecution for delivering a controlled substance, it can be said that the substance was a deadly weapon used during the commission of the offense within the meaning of article 42.12, section 3g(a)(2). The State conceded at trial that it was "pushing the envelope" with respect to the deadly weapon finding, and asked the jury to "make a decision that then will allow higher authorities to ultimately decide the issue." To determine whether the deadly weapon finding was appropriate, we must answer two questions: was the cocaine "used . . . during the commission of a felony offense" and was the cocaine a deadly weapon.

**Was the cocaine used by Rodriguez during the commission of a felony?**

The only felony offense committed by Rodriguez was the delivery of cocaine to K.R., a minor. Rodriguez argues that cocaine cannot be used to deliver itself. He urges that it was necessary to show that the cocaine was used to facilitate the commission of an associated felony distinct from the delivery.

All felonies are theoretically susceptible to an affirmative finding regarding the use or exhibition of a deadly weapon. *See Patterson v. State*, 769 S.W.2d 938, 940 (Tex. Crim. App. 1989). The phrase "'used . . . during the commission of a felony offense' refers certainly to the wielding of a [weapon] with effect, but it extends as well to *any* employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony." *Id*. at 941 (quoting *Patterson v. State*, 723 S.W.2d 308, 315 (Tex. App.—Austin 1987), *aff'd*, 769 S.W.2d 938 (Tex.

7

Crim. App. 1989)). In *Patterson*, for example, the defendant's possession of a firearm was found to facilitate his possession of methamphetamine, the offense for which he was convicted. *See id.* at 942.

Rodriguez relies on the opinions in *Ex parte Petty*, 833 S.W.2d 145 (Tex. Crim. App. 1992)*,* and *Narron v. State*, 835 S.W.2d 642, 644 (Tex. Crim. App. 1992). In *Petty*, the defendant was convicted of unlawful possession of a firearm by a felon, and an affirmative finding was made based solely on his unlawful possession of the handgun. *See Petty*, 833 S.W.2d at 145. The court wrote, "[I]n order to 'use' a deadly weapon for affirmative finding purposes, the weapon must be utilized to achieve an intended result, namely, the commission of a felony offense separate and distinct from 'mere' possession." *Id*. The affirmative finding was impermissible in that case "because there was no associated felony facilitated by the Applicant's possession of the deadly weapon." *Id*. at 145-46. In *Narron*, a prosecution for possession of a prohibited weapon, the court followed *Petty* and deleted an affirmative finding based, as in *Petty*, solely on the possession of the weapon for which he was convicted. *See Narron*, 835 S.W.2d at 644.

In *Tyra v. State*, 897 S.W.2d 796, 797 (Tex. Crim. App. 1995), the defendant was convicted of involuntary manslaughter arising out of his operation of a motor vehicle while intoxicated, and an affirmative finding was made that he used the vehicle as a deadly weapon during the commission of the offense. Citing *Petty* and *Narron*, the defendant argued that the affirmative finding was impermissible because his use of the vehicle was an essential element of the offense for which he was convicted; he did not use the vehicle to facilitate a separate and distinct associated felony. *See id.* at 798. The court rejected this argument, writing that *Petty* and *Narron* mean only

that "mere possession of the weapon without putting it to any use or purpose whatsoever does not" constitute "use" of the weapon within the meaning of article 42.12, section 3g(a)(2). *Id*. *Petty* and *Narron* "do not stand for the proposition that the phrase 'used or exhibited a deadly weapon during commission of a felony offense' necessarily means 'used or exhibited a deadly weapon during commission of an offense which does not otherwise require the use or exhibition of a deadly weapon.'" *Id*. The court added, "There is simply nothing in the phrase 'used a deadly weapon' to imply that it must always be used to commit an 'associated offense.'" *Id*. The court held that the affirmative finding was proper even though involuntary manslaughter always involved the use of a deadly weapon. *See id*.; *see also Mann v. State*, 13 S.W.3d 89, 91 (Tex. App.—Austin 2000, pet. granted) (upholding finding that defendant used automobile as deadly weapon during commission of felony driving while intoxicated).

Rodriguez was not convicted of merely possessing cocaine. He "used" the cocaine by delivering it in the same sense that the defendant in *Tyra* "used" his automobile during the commission of the involuntary manslaughter. In light of *Tyra*, we must reject Rodriguez's argument that the delivery of a controlled substance cannot, in itself, constitute the "use" of the substance "during the commission of a felony offense" within the meaning of article 42.12, section 3g(a)(2). Whether the affirmative finding was appropriate in this cause therefore turns on whether the cocaine was shown to be a deadly weapon.

***Was the cocaine a deadly weapon?***

Under the penal code, there are two kinds of deadly weapons. First, there are those things that are deadly weapons by design: "a firearm or anything manifestly designed, made, or

adapted for the purpose of inflicting death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17)(A) (West 1994). Second, there are those things that become deadly weapons by use: "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id*. § 1.07(a)(17)(B). If a thing is shown to be a deadly weapon by design, it is not necessary to prove in a particular case that it was really capable of causing death or serious bodily injury in that case. *See Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991). But if the State seeks to prove that a thing became a deadly weapon by the manner of its use or intended use, the evidence must establish that it was capable of causing death or serious bodily injury as used by the defendant in that case. *See Holder v. State*, 837 S.W.2d 802, 807 (Tex. App.—Austin 1992, pet. ref'd).

The State does not contend and made no effort to prove that the cocaine in question was a deadly weapon by design. Instead, the State sought to prove that the cocaine was a deadly weapon because it was capable of causing death or serious bodily injury in the manner of its use or intended use. There is no evidence that Rodriguez's use of the cocaine differed from his intended use, so we will examine the record to determine if there is evidence to support a finding that the cocaine was used by Rodriguez in a manner capable of causing death or serious bodily injury.

The only evidence pertinent to the deadly weapon issue was that of Dr. Charles Smith, a family practice physician in New Braunfels. Dr. Smith testified that cocaine can have "a wide variety of effects" ranging "from mild to profound systems [*sic*] such as a coma, convulsions, even heart attack and death." According to the witness, the short-term effects of cocaine use include increased heart rate, sweating, increased blood pressure, dilation of the pupils, and sometimes cardiac arrhythmia. Long-term effects can include chronic damage to the heart muscle. The doctor testified that "there's not been a minimum safe dose established for cocaine. So any dose could be a potential

10

time bomb." Dr. Smith was of the opinion that "cocaine is a very lethal substance" that "has the capability to cause a myriad of effects, either short term or long term." In the doctor's opinion, "one may be lucky enough to survive several encounters with cocaine, [but] he or she may not survive the next one. There is just no way to know." During cross-examination, Dr. Smith confirmed that cocaine has some legitimate medicinal uses, and acknowledged that it is possible that a single use of cocaine might not cause death or serious injury. He also said that cocaine must be ingested in order to have any effect.[4]

Dr. Smith's testimony does not support a finding that the cocaine in this cause was capable of causing death or serious bodily injury in the manner of its use by Rodriguez. First, Smith's testimony was irrelevant to *Rodriguez's* use of the cocaine. Rodriguez "used" the cocaine during the offense by placing it on a flat surface, chopping it with a razor blade, and arranging it into lines. Smith did not testify—and there is no other evidence—that this use of the cocaine was capable of causing serious bodily injury or death. Indeed, Smith testified that cocaine must be ingested to have a deleterious effect. There is no evidence that Rodriguez injected K.R. with cocaine or forced her to ingest it.

It is helpful to distinguish Rodriguez's conduct from that of the defendant in *Davis v. State*, 955 S.W.2d 340 (Tex. App.—Fort Worth 1997, pet. ref'd). The defendant in that case was an oral surgeon who, it was shown, routinely administered excessive dosages of sedatives to his

---

[4] The State also offered the testimony of Jorge Rodriguez, an agent with the Drug Enforcement Administration. Agent Rodriguez described the process by which cocaine is extracted from coca leaves in countries such as Bolivia and Columbia. He also testified that cocaine sold on the street can be over ninety percent pure, but is often "cut" by the addition of other substances. Agent Rodriguez had no information, however, regarding the cocaine delivered to K.R. by appellant Rodriguez, and the State does not rely on his testimony on appeal.

11

patients by injection during surgical procedures. *See id*. at 342-46. On one such occasion, the patient died. *See id*. The defendant was convicted of manslaughter and the jury found that he used a deadly weapon, the sedatives, during the commission of the offense. *See id*. at 352. The court of appeals held that the evidence supported a finding that the defendant used the mixture of drugs during the offense in a manner capable of causing death. *See id*.

Unlike the defendant in *Davis*, Rodriguez merely made the cocaine available to K.R., albeit knowing that she would inhale the drug. The State would have this Court sustain the deadly weapon finding because Rodriguez delivered a drug to K.R. that was used *by K.R.* in a manner capable of causing death or serious bodily injury. The State, however, was obligated to prove that *Rodriguez* used the cocaine in a manner capable of causing death or serious bodily injury.[5] Dr. Smith's testimony does not speak to Rodriguez's use of the cocaine in this cause.

Second, even if a finding that Rodriguez used a deadly weapon could be based on K.R.'s use of the cocaine, Dr. Smith's testimony is insufficiently related to that use. Smith's testimony broadly establishes that the recreational use of cocaine can result in physical reactions ranging from "mild to profound," including death in some cases. But an alleged deadly weapon's capability of causing serious bodily injury or death in the manner of its use must be evaluated in light of the facts that actually existed when the felony was committed. *See Williams v. State*, 946 S.W.2d 432, 435 (Tex. App.—Fort Worth 1997), *rev'd on other grounds*, 970 S.W.2d 566 (Tex. Crim. App. 1998). The record before us is silent in that regard. There is no evidence as to the purity or potency

---

[5] Article 42.12, section 3g(a)(2) permits an affirmative finding based on another person's use of a deadly weapon only if the defendant is convicted as a party to the offense and knew that a deadly weapon would be used. Rodriguez was not convicted as a party.

of the cocaine Rodriguez delivered to K.R, or otherwise suggesting that this cocaine was likely to cause a serious, rather than a mild, physical reaction in the user. There is no evidence that the manner in which K.R. used the cocaine, inhaling it in its powder form, was more likely to result in serious injury to the user than other forms of use, such as injecting it in solution. There is no evidence that K.R. was especially susceptible to an adverse reaction from cocaine use.

To support a finding that the cocaine was a deadly weapon in the manner of its use, the State was required to demonstrate that the cocaine in this cause was capable of causing death or serious bodily injury as it was used in this cause. *See Holder*, 837 S.W.2d at 802. Testimony that there is an unknown possibility of a serious adverse physical effect arising out of the use of some cocaine by some persons under some circumstances does not satisfy that burden.

We hold that the evidence is legally insufficient to support the finding that the cocaine was a deadly weapon in the manner of its use by Rodriguez and sustain point of error one. We need not address the factual sufficiency challenge in point two.

The district court's judgment is modified to delete the affirmative finding that a deadly weapon was used during the commission of the offense. *See Williams*, 970 S.W.2d at 566 (remedy when affirmative finding erroneously made). As modified, the judgment is affirmed.

Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

13

Modified and, as Modified, Affirmed

Filed:   November 2, 2000

Publish