# NO. 12-12-00277-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *RONCHEKAL DEMUNE YON,* *APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *OPINION*

Ronchekal Demune Yon appeals his conviction for injury to a child, for which he was sentenced to imprisonment for fifteen years. In two issues, Appellant contends that there is insufficient evidence to support the jury's deadly weapon finding and the trial court improperly ordered Appellant to pay court costs not supported by a bill of costs. We modify and affirm as modified.

## BACKGROUND

Appellant attended a gathering in a home on March 17, 2012. Among those present in the home was D.C., a sixteen month old boy. Appellant arrived at the home with a large soda cup containing vodka. During the course of the gathering, D.C. gained access to the cup of vodka and consumed a portion of it. At approximately 2:00 a.m., D.C. was observed as acting "woozy" and "dizzy." D.C. was further noted to have exhibited both intervals of consciousness, during which he was able to communicate, and a deep slumbering state, which required "painful stimulation" to get him to open his eyes. As a result, medical personnel were called to the home, and D.C. was transported by ambulance to East Texas Medical Center. A blood test was performed at 5:07 a.m., the results of which indicated that D.C. had a blood alcohol level of

0.245.[1]  Later that morning, D.C. was transported by helicopter to Children's Medical Center in Dallas for further treatment and observation.  The alcohol was naturally eliminated from D.C.'s body over time, and he was released two days later.

Appellant was charged by indictment with intentionally causing bodily injury to D.C. by providing ethanol to him and by allowing him to drink it.  The indictment further alleged that Appellant used or exhibited ethanol as a deadly weapon during the commission of or immediate flight from the offense.  Appellant pleaded "not guilty," and the matter proceeded to a jury trial.  Ultimately, the jury found Appellant guilty of recklessly causing bodily injury to D.C., made an affirmative deadly weapon finding, and assessed Appellant's punishment at imprisonment for fifteen years.  The trial court sentenced Appellant accordingly, and this appeal followed.

## EVIDENTIARY SUFFICIENCY OF DEADLY WEAPON FINDING

In his first issue, Appellant contends that the evidence is insufficient to support the jury's deadly weapon finding.  Specifically, Appellant contends that the evidence at trial supported only a hypothetical danger posed by the manner in which the ethanol was used, and D.C. was not actually placed in danger of serious bodily injury or death.

**Standard of Review**

The ***Jackson v. Virginia***[2] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt.  *See **Brooks v. State***, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).  Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction.  *See **Jackson***, 443 U.S. at 315–16, 99 S. Ct. at 2786–87; *see also **Escobedo v. State***, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd).  The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; *see also **Johnson v. State***, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).  The evidence is examined in the light most favorable to the verdict.  *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at

---

[1] In his testimony, one of D.C.'s treating physicians explained that this number represents 245 milligrams of alcohol per deciliter of blood.

[2] 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979).

2789; *Johnson*, 871 S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

## Governing Law

The Texas Penal Code defines a "deadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp. 2012). A weapon can be deadly by design or use. *Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008). An object is a deadly weapon by usage if "in the manner of its use or intended use," the object "is capable of causing death or serious bodily injury." *Id.* The phrase "used during the commission of a felony offense" refers to the wielding of a weapon with effect, but it extends as well to any employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony. *See Rodriguez v. State*, 31 S.W.3d 772, 777 (Tex. App.–Austin 2000, no pet.) (citing *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989)). "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Tucker*, 274 S.W.3d at 691. The placement of the word "capable" is crucial to understanding this method of determining deadly weapon status. *Id.* The state is not required to show that the "use or intended use causes death or serious bodily injury" but that the "use or intended use is capable of causing death or serious bodily injury." *Id.*; *see also Mechell v. State*, 374 S.W.3d 454, 458 (Tex. App.–Waco 2011, pet. ref'd) (capability is evaluated based on circumstances that existed at time of offense; the word "capable" is expansive, not limiting). Even without expert testimony or a description of the weapon, the injuries suffered by the victim can by themselves be a sufficient basis for inferring that a deadly weapon was used. *Tucker*, 274 S.W.3d at 691–92. However, the state is required to show that the object had more than a hypothetical capability of

causing death or serious bodily injury. ***Johnston v. State***, 115 S.W.3d 761, 764 (Tex. App.–Austin 2003), *aff'd*, 145 S.W.3d 215 (Tex. Crim. App. 2004).

**Ethanol as a Deadly Weapon**

In support of his argument, Appellant relies on the court's holding in ***Rodriguez v. State***. In ***Rodriguez***, the appellant gave a child cocaine, which the child inhaled while the appellant watched. *See **Rodriguez***, 31 S.W.3d at 774. In discussing the sufficiency of the evidence to support the finding that the cocaine, in the manner of its use, was a deadly weapon, the court noted that there was no evidence regarding the purity or potency of the cocaine the appellant delivered to the child. *See **id.*** at 779. Nor was there any evidence that otherwise suggested the cocaine in question was likely to cause a serious, rather than a mild, physical reaction in the user. *See **id***. The court further noted that there was no evidence that the child was especially susceptible to an adverse reaction from cocaine use. *See **id.*** Thus, the court concluded that testimony that there is an unknown possibility of a serious adverse physical effect arising out of the use of some cocaine by some persons under some circumstances does not satisfy the state's burden to demonstrate that the cocaine was capable of causing death or serious bodily injury as it was used. *See **id.***

In reaching its conclusion, the court in ***Rodriguez*** distinguished the facts before it from the facts in ***Davis v. State***, 955 S.W.2d 340 (Tex. App.–Fort Worth 1997, pet. ref'd). In ***Davis***, the appellant was an oral surgeon who, the evidence indicated, routinely administered excessive dosages of sedatives to his patients by injection during surgical procedures. ***Id.*** at 342–46. After one of his patients died, the appellant was convicted of manslaughter, and the jury found he used a deadly weapon, the sedatives, during the commission of the offense. *See **id.*** at 352. In upholding the jury's finding, the court of appeals noted that the medical evidence indicated the victim's blood contained more than twice the minimum lethal dosage of Demerol and of Versed, and that either of these dosages alone could have been fatal. *See **id.*** at 352.

In the case at hand, Appellant concedes that alcohol consumption by a young child can result in death or serious bodily injury. He contends, however, that the effects of the alcohol on D.C. left his bodily functions and heart rate within the normal range and the alcohol cleared his body without the use of medication. At trial, the State presented evidence through the testimony of, among others, Bradley King, M.D. and Matthew Cox, M.D., D.C.'s treating physicians.

4

King testified that he treated D.C. at East Texas Medical Center. King further testified that his treatment of D.C. included toxicity screens, blood tests, and urine tests. King stated that D.C.'s breathing was not vigorous and he had lost his protective upper airway reflexes, which made him susceptible to choking, sucking down secretions into his lungs, and developing pneumonia, i.e., aspirating. King described D.C.'s susceptibility to aspiration as a result of his lack of upper airway reflexes to be a life threatening condition. King further stated that D.C. was intubated and placed on a ventilator to assist his breathing. King testified that D.C.'s blood alcohol level was 0.245 when the results of his blood test were returned at 5:20 a.m. King explained that, for an uninitiated drinker like D.C., a 0.245 blood alcohol level would be considered "toxic." King further explained that if D.C. ingested the alcohol at 2:00 a.m., his blood alcohol level would have been higher at that point in time than it was when the blood test results were received. King stated that any blood alcohol level over 0.250 would place a child like D.C. at risk for seizures and death. King further stated that, in this situation, D.C.'s ingestion of alcohol could have caused him serious bodily injury or death.

Cox testified that he treated D.C. at Children's Medical Center in Dallas. Cox stated that by 9:00 a.m., D.C.'s blood alcohol level had fallen to 0.174. Cox stated that they were able to remove D.C. from life support measures shortly before noon that day. Cox described D.C. as "quite sluggish" and unable to sit on his own without support. Cox testified that he was concerned about D.C.'s welfare, considering his age and level of intoxication, which led him to believe that D.C. was given alcohol purposefully or intentionally on this occasion. Specifically, he believed that D.C.'s blood alcohol level indicated that he would have had to consume a fairly large volume of alcohol. When informed that a sample of a beverage containing 12.9% ethanol was collected from the house in question, Cox stated that D.C. would have had to consume nine to ten ounces to reach the level of intoxication recorded. Cox further stated that since the taste of most alcoholic beverages would not be palatable to a young child, it was more likely that a child would not consume that much alcohol on his own. Rather, Cox concluded that D.C. was forced to ingest alcohol. Cox testified that if D.C. had consumed the alcohol at 2:00 a.m., his blood alcohol level would have been higher than the 0.245 concentration reported from the blood drawn at 5:07 a.m. Based on the rate at which D.C.'s body metabolized the alcohol between the test performed at East Texas Medical Center and the subsequent test performed at Children's Medical Center, Cox estimated that his blood alcohol level could have been as high as 0.295 at

2:00 a.m. Cox stated that such a high blood-alcohol level could result in serious bodily injury or death in a toddler based on possible respiratory depression, aspiration of vomit, or slowing of brain function.

We conclude that the facts here are more analogous to the facts in *Davis* than they are to the facts in *Rodriguez*. Here, there is evidence that the potency of the alcoholic beverage recovered from the house was 12.9% ethanol. Both Cox and King testified that D.C.'s blood alcohol level would have been in the potentially lethal range in the hours before his blood was drawn at East Texas Medical Center. King testified that when he observed D.C., the child had lost his protective upper airway reflexes, making him susceptible to aspirating, which he described as a life threatening condition. Finally, Cox testified that D.C.'s level of intoxication, his age, and the improbability that a child would find an alcoholic beverage such as the one recovered from the home to be palatable, caused him to conclude that D.C. had been forced to consume the alcohol. Therefore, based on our review of the record, including the aforementioned evidence, we conclude the ethanol, in the manner of its use, was capable of causing death or serious bodily injury to D.C. Accordingly, we conclude that there is legally sufficient evidence to support the jury's finding that Appellant used ethanol as a deadly weapon during his commission of the offense of reckless injury to a child. Appellant's first issue is overruled.

## EVIDENTIARY SUFFICIENCY OF COURT COSTS

In his second issue, Appellant contends that the trial court erred by imposing court costs not supported by a bill of costs and by ordering that the same be withdrawn from his inmate trust account. Since the filing of Appellant's brief, the record in each case has been supplemented with a bill of costs. *See Johnson v. State*, No. 12-12-00289-CR, 2013 WL 3054994, at *2 (Tex. App.—Tyler June 19, 2013, no pet.) (permitting supplementation of record with bill of costs). Accordingly, we review Appellant's issues as challenges to the sufficiency of the evidence supporting court costs in each case.

### Standard of Review and Applicable Law

A challenge to the sufficiency of the evidence supporting court costs is reviewable on direct appeal in a criminal case. *See Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011). We measure sufficiency by reviewing the record in the light most favorable to the award. *Mayer*, 309 S.W.3d at 557 (Tex. Crim. App. 2010). Requiring a convicted defendant to pay

court costs does not alter the range of punishment, is authorized by statute, and is generally not conditioned on a defendant's ability to pay. *See* TEX. CODE CRIM. PROC. ANN. art. 42.16 (West 2006); ***Armstrong***, 340 S.W.3d at 767; *see also* ***Johnson***, 2013 WL 3054994, at *3.

Some court costs, such as attorney's fees, may not be assessed against a defendant if he was found indigent because his indigence is presumed to continue throughout the remainder of the proceedings "unless a material change in [his] financial circumstances occurs." *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(p) (West Supp. 2012). If a trial court does not make a determination that a defendant's financial circumstances materially changed that is also supported by some factual basis in the record, the evidence will be insufficient to impose attorney's fees as court costs. *See* TEX. CODE CRIM. PROC. ANN. arts. 26.04(p), 26.05(g) (West Supp. 2012); ***Mayer***, 309 S.W.3d at 553; ***Wolfe v. State***, 377 S.W.3d 141, 144, 146 (Tex. App.– Amarillo 2012, no pet.).

## Evidence Supporting Assessment of Costs

In the instant case, the judgment of conviction reflects that the trial court assessed $669.00 in court costs. The judgment includes a document identified as "Attachment A Order to Withdraw Funds," which states that Appellant has incurred "[c]ourt costs, fees and/or fines and/or restitution" in the amount of $669.00. The certified bill of costs itemizes the court costs imposed, which also total $669.00. We have reviewed each of the fees listed in the bill of costs. Except for the items listed as "attorney fees" and "Child Abuse Prevention Fee," all other costs and fees are authorized by statute.

The State concedes that the assessment of attorney's fees is improper. The trial court twice determined that Appellant was indigent, and there is no evidence in the record to rebut the presumption that Appellant's indigence continued throughout the remainder of the proceedings. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(p); ***Wolfe***, 377 S.W.3d at 144. As a result, the evidence is insufficient to support the imposition of attorney's fees as court costs. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(p), 26.05(g); ***Mayer***, 309 S.W.3d at 553; ***Wolfe***, 377 S.W.3d at 146.

The item listed as "Child Abuse Prevention Fee" shall be imposed where an individual is convicted of an offense under Texas Penal Code, Sections 21.02, 21.11, 22.011(a)(2), 22.021(a)(1)(B), 43.25, 43.251, or 43.26. *See* TEX. CODE CRIM. PROC. ANN. art 102.0186 (West Supp. 2012). Appellant was assessed the "Child Abuse Prevention Fee." However, Appellant

was convicted of injury to a child, which is not one of the offenses warranting the imposition of this fee. *See* TEX. CODE CRIM. PROC. ANN. art. 102.0186; TEX. PENAL CODE ANN. 22.04(a), (e) (West Supp. 2012) (recklessly causing injury to a child). Accordingly, the evidence is insufficient to support the imposition of the $100.00 "Child Abuse Prevention Fee" assessed in the bill of costs.

Appellant's second issue is sustained in part.

## DISPOSITION

We have overruled Appellant's first issue, but have sustained Appellant's second issue in part. Accordingly, we modify the trial court's judgment to reflect that the amount of court costs is $269.00. *See* TEX. R. APP. P. 43.2(b). We also modify Attachment A to state that the total amount of "court costs, fees and/or fines and/or restitution" is $269.00. *See, e.g., **Reyes v. State**,* 324 S.W.3d 865, 868 (Tex. App.–Amarillo 2010, no pet.). We ***affirm*** the trial court's judgment ***as modified***. *See* TEX. R. APP. P. 43.2(b).

SAM GRIFFITH
Justice

Opinion delivered September 4, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

8



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

SEPTEMBER 4, 2013

NO. 12-12-00277-CR

**RONCHEKAL DEMUNE YON,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 114th Judicial District Court

of Smith County, Texas (Tr.Ct.No. 114-0521-12)

THIS CAUSE came on to be heard on the appellate record and the briefs filed herein; and the same being inspected, it is the opinion of the Court that the trial court's judgment below should be **modified and, as modified, affirmed**.

It is therefore ORDERED, ADJUDGED and DECREED that the trial court's judgment below be **modified** to reflect that the amount of court costs is $269.00. We also modify Attachment A to state that the total amount of "court costs, fees and/or fines and/or restitution" is $269.00; **and as modified**, the trial court's judgment is **affirmed**; and that this decision be certified to the trial court below for observance.

Sam Griffith, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*