# NO. 12-14-00112-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CALVIN LOUISE RUSHING,*<br>*APPELLANT* | § | *APPEAL FROM THE 217TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Calvin Louise Rushing appeals his conviction for aggravated robbery, for which he was sentenced to imprisonment for fifty years. In two issues, Appellant argues that (1) the trial court erred in permitting a witness to make an impermissible in-court identification of him and (2) the evidence is legally insufficient to support his conviction. We affirm.

### BACKGROUND

Appellant was charged by indictment with aggravated robbery and pleaded "not guilty." The case proceeded to a bench trial.

The evidence at trial indicates that shortly before 3:00 a.m., on May 20, 2012, an African American male entered the Polk's Pick-it-Up store near the Idlewood subdivision in Angelina County, Texas. The store employees, Micah Cooper and Mindy Tovar, were in the process of closing the store. Once inside, the man entered the store's public restroom near the checkout counter. A short time later, he emerged from the restroom and exited the store. As he departed, the man walked past Cooper, who "got a good look at him." At the time, the store's interior and exterior were equipped with multiple surveillance cameras connected to a continuously operating digital video recorder system.

Soon thereafter, Cooper was in the store cooler and heard Mindy Tovar call his name. Cooper looked through the cooler doors and saw Tovar and an African American male with a towel over his head walking toward the cooler. Cooper noted that the man was wearing the same clothes as the man he observed leaving the restroom earlier.[1] Cooper exited the cooler and saw that the man had a "spear like object" in his hand. Cooper elaborated that the object was a couple of feet long with a two or three inch long sharp metal point on the end.

The man directed Cooper and Tovar to walk to the checkout counter, where they emptied the money from the cash registers and handed it to him. Next, the man led the two store employees to the back storeroom and told them to lie face down on the floor. Cooper and Tovar complied and remained there until Cooper heard a customer in the store. At that point, Cooper engaged the silent alarm and called 9-1-1 from his cell phone. Cooper later determined that the man had absconded with approximately $400 in cash, a six pack of beer, cigarettes, and cigarette lighters.

In response to Cooper's 9-1-1 call, Angelina County Sheriff's Deputy Howard McDaniel arrived at the scene. McDaniel viewed the surveillance video and identified the vehicle in which the suspect arrived at the store as a white Buick Century. The following evening, a Lufkin Police Department officer stopped a vehicle matching that description. McDaniel, who was contacted regarding the vehicle, soon arrived at the location. Appellant, who was driving the vehicle, was arrested for driving without a valid license. During the ensuing search of the vehicle, a towel bearing some similarity to the towel worn in the Polk's store robbery was discovered in the vehicle along with an open thirty pack of beer.

On cross examination, McDaniel stated that, at the time of arrest, Appellant had a similar build and similar features as did the man Cooper described to him. But McDaniel conceded that Appellant did not, at that time, have any facial hair, nor was he dressed the same as the man Cooper described. McDaniel also acknowledged other discrepancies. Specifically, he testified his report indicated that Cooper stated the object the man used may have been a rake or a cultivator, but that the dispatch call notes set forth that the suspect used a metal pipe. He further

---

[1] At trial, Cooper identified Appellant as the individual he encountered that night.

testified that the garden cultivator found in the trunk of the Buick Century was suspected to have been the object used in the robbery, and no spear-like object was found in the vehicle.[2]

James Bates testified he was the owner of and a passenger in the Buick Century that Appellant was driving when he was stopped by police the night after the robbery. Bates further testified that he had known Appellant for a couple of months and that Appellant borrowed the vehicle the night of the offense and returned it the next day. Bates only vaguely recalled Appellant's reason for borrowing his vehicle. And he could not remember whether Appellant had facial hair at the time in question. Bates verified that the vehicle identified in the surveillance video and photographs had the same type of tires his vehicle had at that time.

Melton Joyce testified that Appellant worked for him at the time leading up to the robbery. Joyce further testified that he could not remember if Appellant had facial hair during the time immediately preceding his arrest. However, Joyce recalled that Appellant did, at times, have facial hair when he worked for him.

At the conclusion of trial, the trial court found Appellant "guilty" as charged. After conducting a sentencing hearing, the trial court sentenced Appellant to imprisonment for fifty years. This appeal followed.

### ADMISSIBILITY OF THE IN-COURT IDENTIFICATION

In his first issue, Appellant argues the trial court erred in allowing Cooper's in-court identification because it was tainted by an earlier, unduly suggestive identification procedure.[3]

**Applicable Law**

An in-court identification is inadmissible if it has been tainted by an impermissibly suggestive pretrial identification procedure. *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999). In determining whether a trial court erroneously admitted in-court identification testimony, we first must determine whether the pretrial procedure was impermissibly suggestive. *See id.* Next, we ascertain whether the procedure gave rise to a substantial likelihood of irreparable misidentification. *See id.*; *Loserth v. State*, 985 S.W.2d 536, 543 (Tex. App.–San

---

[2] McDaniel stated that even though his report indicated that Cooper referred to the object as a rake or cultivator, Cooper never, in fact, referred to the object as a rake or cultivator. McDaniel further stated that he did not intend to imply in his report that Cooper identified the object as either of those things.

[3] Cooper did not participate in any traditional identification "lineup." Presumably, Appellant contends that allowing Cooper to view the video security surveillance footage of the offense shortly before he testified at trial was an unduly suggestive identification procedure.

Antonio 1998, pet. ref'd); *see also **Delk v. State***, 855 S.W.2d 700, 706 (Tex. Crim. App. 1993).

The defendant bears the burden to prove these two elements by clear and convincing evidence. ***Barley v. State***, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995). If the defendant meets his burden, the in-court identification is inadmissible unless the state presents clear and convincing evidence that the identification was of "independent origin." ***United States v. Wade***, 388 U.S. 218, 240 n.31, 875 S. Ct. 1926, 1939 n.31, 18 L. Ed. 2d 1149 (1967).

Reliability is the linchpin in determining the admissibility of the identification testimony. *See **Loserth***, 963 S.W.2d at 772. Testimony is reliable if the totality of the circumstances reveals no substantial likelihood of misidentification despite a suggestive pretrial procedure. *See **id.*** In assessing reliability, we consider the following nonexclusive factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of alertness; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the time of confrontation; and (5) the lapse of time between the alleged act and the time of confrontation. *See **Ibarra***, 11 S.W.2d at 195 (citing ***Neil v. Biggers***, 409 U.S. 188, 199–200, 93 S. Ct. 375, 382, 34 L. Ed. 2d 401 (1972)). We consider these factors, all issues of historical fact, deferentially in a light favorable to the trial court's ruling. ***Ibarra***, 11 S.W.2d at 195. The factors, viewed in this light, are then weighed de novo against "the corrupting effect" of the suggestive pretrial identification procedure. ***Id.*** at 195–96. A finding that a challenged pretrial identification procedure was not, in fact, impermissibly suggestive will obviate the need to assay whether, under the circumstances, it created a substantial likelihood of misidentification. ***Webb v. State***, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988).

**<u>Analysis</u>**

In the instant case, Cooper described the suspect to law enforcement officers as an African American male over six feet tall and having a muscular build, with a mustache and goatee. Cooper conceded at trial that a customer's using the public restroom was not unusual. However, he stated that the man was wearing a white shirt with a palm tree on the back, which caught his attention. Moreover, Cooper admitted that he avoided looking directly at the man during the commission of the offense. But he reviewed the surveillance video of the robbery on the store's computer and was able to see that man's face in some of the footage. Cooper stated that he was not asked to view a photo lineup or otherwise identify the man who entered the store to use the restroom and who later committed the crime.

4

Before trial, Cooper again viewed the surveillance video at the district attorney's office. Over objection, Cooper identified Appellant at trial as the person who committed the offense.[4] Cooper testified that he had no doubt that Appellant was the same man who entered the store, used the restroom, and later re-entered the store with the towel over his head to commit the robbery. On cross examination, Cooper acknowledged that there was no one else in the courtroom other than Appellant who resembled the individual depicted in the video.

This court is well aware that the manner or the content of a pretrial identification procedure may render it impermissibly suggestive. *See Barley*, 906 S.W.2d at 33. Use of a lone photograph without any of the traditional safeguards of a lineup or photo array is inherently suspect and has been uniformly condemned by the courts. *Loserth*, 985 S.W.2d at 543. Appellant contends on appeal that our conclusion concerning whether the pretrial procedure was impermissibly suggestive is "obvious." We disagree.

The state is required to prove that the accused was the person who committed the crime. *Wilson v. State*, 9 S.W.3d 852, 855 (Tex. App.–Austin 2000, no pet.). The identity of the perpetrator of an offense can be proved by direct or circumstantial evidence. *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); *Dudley v. State*, 205 S.W.3d 82, 88 (Tex. App.–Tyler 2006, no pet.). No formalized procedure is required for the state to prove the identity of the accused. *Wilson*, 9 S.W.3d at 855.

Here, Cooper had an opportunity to observe Appellant when Appellant first entered the store, when he emerged from the restroom, and during the commission of the offense. Cooper also had an opportunity to observe Appellant when he watched the surveillance video. Approximately two years had passed from the date of offense by the time of Cooper's trial testimony. But the only photographs he was shown prior to trial were those derived from the same surveillance video he previously viewed, and which was admitted into evidence without objection.[5] The surveillance video "speaks for itself" and could have been used by the court

---

[4] The video of the entire event was introduced into evidence along with numerous photographs made from the video. In those photographs, the face of a man wearing the towel over his head is visible along with a spear-like object in his hand.

[5] The record indicates that, prior to trial, the prosecutor had Cooper sit in the courtroom to "look at an individual and see if he recognized him." However, Appellant has not argued that this action served to taint Cooper's in-court identification testimony. *See* TEX. R. APP. P. 38.1(i). Even so, there is nothing in the record concerning what Cooper observed in this instance. Thus, the fact that Cooper may have observed an individual in the courtroom for the purposes of recognition, without more, does not aid us in determining whether any such observation Cooper may have had of Appellant was impermissibly suggestive.

without Cooper's in-court identification to link Appellant to the offense. Moreover, any discrepancies concerning whether Appellant had facial hair at the time in question go to the weight of Cooper's in-court identification, not its admissibility. *See, e.g., Jackson v. State*, 657 S.W.2d 123, 128 (Tex. Crim. App. 1983) (fact that witness testified she could not recall specific facts related to clothes worn by person she identified at trial as perpetrator went to weight rather than to admissibility of identification).

Appellant further argues that Cooper's in-court identification was tainted because Appellant was the only person in the courtroom who matched the description given by Cooper. However, Appellant has not cited to, nor is this court aware of, any authority holding that the fact that a defendant is sitting at the table next to defense counsel when a witness is making an in-court identification is an impermissibly suggestive procedure that may lead to a very substantial likelihood of irreparable misidentification. *See Harrison v. State*, No. 14-10-00254-CR, 2011 WL 5589532, at *15 (Tex. App.–Houston [14th Dist.] Nov. 17, 2011, no pet.) (mem. op., not designated for publication); *cf. Maxwell v. State*, 10 S.W.3d 785, 787 (Tex. App.–Austin 2000) (noting that defendant still has no right to pretrial lineup under *Sapp v. State*, 476 S.W.2d 321, 323 (Tex. Crim. App. 1972)).

Based on our review of the record, with due consideration given to the nonexclusive factors pertaining to Cooper's reliability, we hold that Cooper's identification of Appellant was not impermissibly suggestive. Accordingly, we need not address whether it created a substantial likelihood of misidentification. *See Webb*, 760 S.W.2d at 269. Appellant's first issue is overruled.

**EVIDENTIARY SUFFICIENCY-DEADLY WEAPON**

In his second issue, Appellant argues that the evidence is insufficient to support the trial court's finding that he used or exhibited a deadly weapon during the commission of the offense.

**Standard of Review**

In Texas, the *Jackson v. Virginia*[6] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the

---

[6] 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979).

constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson*, 443 U.S. at 315–16, 99 S. Ct. at 2786–87; *see also Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *Johnson*, 871 S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and, therefore, defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We further defer to the factfinder as the sole judge of the witnesses' credibility and the weight of their testimony. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Brooks*, 323 S.W.3d at 899. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

We measure the sufficiency of the evidence against the elements of the offense as defined by the hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the state's burden of proof or unnecessarily restrict the state's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id*. This standard can be applied to both jury trials and bench trials. *See id*.

**Applicable Law**

A person commits the offense of aggravated robbery if he commits robbery and uses or exhibits a deadly weapon. *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2011). The Texas Penal Code defines a "deadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B) (West Supp. 2014). A weapon can be deadly by design or use. *Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008). The phrase "used during the commission of a felony offense" refers to the wielding of a weapon with effect, but it extends as well to any employment of a deadly weapon, even its

7

simple possession, if such possession facilitates the associated felony. *See **Rodriguez v. State***, 31 S.W.3d 772, 777 (Tex. App.–Austin 2000, no pet.) (citing ***Patterson v. State***, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989)).

"Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." ***Tucker***, 274 S.W.3d at 691. The placement of the word "capable" is crucial to understanding this method of determining deadly weapon status. ***Id.*** The state is not required to show that the "use or intended use causes death or serious bodily injury" but that the "use or intended use is capable of causing death or serious bodily injury." ***Id.***; *see also **Mechell v. State***, 374 S.W.3d 454, 458 (Tex. App.–Waco 2011, pet. ref'd) (capability is evaluated based on circumstances that existed at time of offense; the word "capable" is expansive, not limiting). Even without expert testimony or a description of the weapon, the injuries suffered by the victim can by themselves be a sufficient basis for inferring that a deadly weapon was used. ***Tucker***, 274 S.W.3d at 691–92. However, the state is required to show that the object had more than a hypothetical capability of causing death or serious bodily injury. ***Johnston v. State***, 115 S.W.3d 761, 764 (Tex. App.–Austin 2003), *aff'd*, 145 S.W.3d 215 (Tex. Crim. App. 2004).

There are several factors to consider in determining whether an object is a deadly weapon, including the size and shape of the object, the physical proximity of the parties, and the weapon's potential for causing death or serious bodily injury. *See **Romero v. State***, 331 S.W.3d 82, 83 (Tex. App.–Houston [14th Dist.] 2010, pet. ref'd) (citing ***Thomas v. State***, 821 S.W.2d 616 (Tex. Crim. App. 1991). Lay testimony may be sufficient to support a deadly weapon finding, and it is not necessary for the weapon to be introduced into evidence. *See **Banargent v. State***, 228 S.W.3d 393, 399 (Tex. App.–Houston [14th Dist.] 2007, pet. ref'd).

<u>**Analysis**</u>

In the case at hand, the indictment alleged that the deadly weapon used in the commission of the offense was "a large stick with metal point at end." The object was clearly visible in the both the surveillance video and in several photographs admitted into evidence.

The record reflects that Cooper was twenty-two years old at the time of the offense, which occurred at a convenience store at approximately 3:00 a.m. Cooper testified that Appellant carried a "spear like object" with a handle at least a couple of feet long and with a

metal point that was between two and three inches long. Cooper further testified that the object seemed like it could cause serious bodily injury and he believed the object was being carried for the purpose of intimidation. Cooper stated that he was fearful of the weapon and concerned that if he did not do as Appellant directed, Appellant would use the weapon to hurt him badly or kill him.

During cross examination, Cooper acknowledged that he never touched or handled the object and that Appellant made no specific threats to use the object against either him or Tovar. And even though the surveillance video and still photographs indicated that Appellant positioned the object horizontally in one or more instances, Cooper testified that Appellant generally held the object at his side.

Appellant contends the record does not indicate that he used the object aggressively toward the store employees. However, we note that interaction is not required to sustain a conviction for aggravated robbery, so long as the accused was aware that his conduct was reasonably certain to place someone in fear, and someone actually was placed in fear. *See Howard v. State*, 333 S.W.3d 137, 140 (Tex. Crim. App. 2011); *see also Herring v. State*, 202 S.W.3d 764, 766 (Tex. Crim. App. 2006) (objects used to threaten deadly force are, in fact, deadly weapons).

Here, the two foot long stick with a sharp metal point carried by Appellant throughout the commission of the offense was not something that would have been routinely carried into a store by a customer. Appellant did not carry it into the store when he first entered the store. Based on our review of the record, we conclude that the trial court reasonably could find that the object Appellant took into the store was intended to intimidate store employees. Moreover, the trial court reasonably could find that Cooper's fear of suffering serious bodily injury or death was justified as a result of his being confronted by a man seeking to conceal his identity and carrying such an object into the store at 3:00 a.m. Therefore, we hold that the evidence is legally sufficient to support the trial court's finding that the object was a deadly weapon. Appellant's second issue is overruled.

## DISPOSITION

Having overruled Appellant's first and second issues, we ***affirm*** the trial court's judgment.

9

**GREG NEELEY**
Justice

Opinion delivered March 25, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 25, 2015**

**NO. 12-14-00112-CR**

**CALVIN LOUISE RUSHING,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 217th District Court

of Angelina County, Texas (Tr.Ct.No. 2012-0431)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*