# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00703-CR

**Veronica Ann Arroyo, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 340TH DISTRICT COURT OF TOM GREEN COUNTY
### NO. C-17-0314-SB, THE HONORABLE BARBARA L. WALTHER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Veronica Ann Arroyo of assault on a public servant and assessed her punishment, enhanced by a prior felony conviction, at confinement for twelve years in the Texas Department of Criminal Justice. *See* Tex. Penal Code §§ 12.42(a), 22.01(a)(1), (b)(1). On appeal, appellant complains about a "misstatement" of the law by the trial court when it responded to an objection and error in the punishment charge. We affirm the trial court's judgment of conviction.

## BACKGROUND

The evidence at trial showed that Frank Flores and Kyle Green, patrol officers with the San Angelo Police Department, responded to appellant's apartment for an "unknown problem" when appellant's neighbor called police to report "banging" in the apartment next door and cracking of the shared wall between the apartments. Appellant, who was in the apartment

with her three-year-old daughter, answered the door when the officers knocked. On making contact with appellant, the officers noticed signs indicative of narcotics usage. Appellant was "disheveled" and exhibited "erratic behavior"—she was "uneasy," "fidgety," and "very talkative"—and had an "excited pitch" in her voice. The officers also noted that she had bloodshot eyes and dilated pupils. Appellant gave the officers permission to enter the apartment to check on things.

On entering the apartment, the officers saw a large hole in the wall in the dining area, hammer marks on the wall, and a hammer on the floor. The officers also saw another big hole in the ceiling of the closet with pieces of sheetrock on the floor. Appellant told the officers that she had recently caused the damage, explaining that she had been robbed and had made the holes to put her child in to hide her.[1] During their interaction with appellant, the officers saw a plastic baggy containing a green leafy substance believed to be marijuana and rolling papers in plain view on the top of the refrigerator. After finding the contraband, the officers decided to arrest appellant for possession of marijuana because they had concerns about the safety of the child given appellant's "very erratic" behavior. They discussed making arrangements for the care of the young child with appellant. She refused to contact a family member or a friend and expressed that she preferred to have CPS take custody of her daughter. The officers contacted

---

[1] Appellant gave a continuously changing, somewhat confusing, story about the robbery. She first indicated that two men had come into her apartment and robbed her of some Nike Air Jordan shoes. Officers found the shoes on the ground in front of her apartment. She next indicated that the robbers were a man and a woman and that she had thrown the shoes out the window to them.

2

CPS and informed appellant that they were placing her under arrest and that one of the officers would remain at the apartment with the child to await CPS while another transported her to jail.[2]

When Officer Flores reached for appellant's right hand to place her in handcuffs, appellant "became combative" and "lunged [toward Officer Flores] with both hands and grabbed [his] duty-issued holster, which had [his] pistol, and began yanking on it."[3] Both officers responded by pushing appellant back into the wall to secure her.[4] The impact of the struggling trio damaged the dry wall. Appellant began "flailing" and "twisting," fighting the officers. The officers took appellant to the ground to gain control over her. She continued fighting the officers: "kicking," "thrashing," "punching," and "clawing." She punched Officer Flores in the face, in the eye area, and scratched his neck, leaving three bleeding scratch marks. Officer Green was injured during the altercation when his eye struck the corner of a drawer that was on the floor. Ultimately, the officers secured appellant and were able to handcuff her.

Appellant was charged in a two-count indictment with assault on a public servant and attempting to take a weapon from a peace officer, both stemming from her altercation with Officer Flores. *See* Tex. Penal Code §§ 22.01(a)(1), (b)(1), 38.14(b). At trial, the three patrol officers testified, describing the encounter and ensuing altercation with appellant. In addition, photographs of appellant's apartment, showing the holes in the dining-area wall and closet

---

[2] By this time, Francisco Carrillo, a third patrol officer who was nearby when the dispatch call was made, had arrived on the scene. He ultimately transported appellant to the jail.

[3] The evidence reflected that Officer Flores was a K-9 officer, whose uniform differed from that of the typical patrol officer in that his firearm was holstered down lower on the outside of his thigh rather than on his utility belt. The holster was secured to his thigh with two elastic straps. According to Officer Flores, appellant "yanked" with such force she displaced the holster, moving it from the outside of his thigh to the front of his thigh.

[4] Officer Carrillo explained that as soon as appellant became combative, he picked up the child and took her to the hallway "to put her out of any potential further risk of harm or injury."

3

ceiling; photographs of Officer Flores and Officer Green, showing their injuries; and an audio recording from the body mic associated with the dashcam of Officer Green's patrol car, chronicling the encounter, were admitted into evidence.[5]  The jury convicted appellant of assaulting Officer Flores but acquitted her of attempting to take his weapon.  At the beginning of the punishment phase, appellant pled true to the enhancement paragraph of the indictment, which alleged a prior conviction for escape.  A copy of a pen pack, which reflected appellant's felony conviction for escape as well as two state-jail felony convictions for possession of a controlled substance, was admitted without objection.  Appellant testified on her own behalf and called a psychologist to testify about her mental-health issues.  The jury found the enhancement allegation to be true and, pursuant to the repeat-offender provision of the Penal Code, assessed her punishment at twelve years in prison and a $500 fine.  Appellant filed a motion for new trial, which the trial court denied.[6]  *See* Tex. R. App. P. 21.8.  This appeal followed.

## DISCUSSION

Appellant raises two points of error on appeal.  First, she complains about a purportedly erroneous statement of law by the trial court when it responded to her objection during the State's closing argument in the punishment phase of trial.  Second, she argues that the trial court's omission of an instruction on the reasonable-doubt burden of proof for extraneous offenses in the punishment charge caused her egregious harm.

---

[5]  The record reflects that Officer Flores's body mic was not working during the encounter with appellant.

[6]  Appellant filed a timely motion for new trial and an untimely amended motion for new trial, to which the State objected.  The trial court conducted a hearing on the amended motion for new trial, allowing appellant to proceed on the untimely motion over the State's objection, and verbally denied the motion.  The trial court's docket sheet reflects the denial of the motion but no written order denying the motion appears in the record.

## Trial Court's Statement

In her first point of error, appellant argues that she suffered "severe harm" from the trial court's purported misstatement of the law when the court implicitly overruled her objection during the prosecutor's punishment argument.

During jury argument at the punishment phase of trial, the following transpired:

[PROSECUTOR]: You have got someone who has not only one prior felony conviction, but three prior felony convictions. You have got someone, who the doctor testifies, whether she is on a narcotic or not or having an episode or not, is going to be unable to respond to a stressful situation. And so when they call it a bad decision, unfortunately, based on Dr. Wright's testimony, this sounds like the only way that it's ever going to end up. If she is not going to do something to get better, then in any stressful situation she is going to react something like this. She is going to go for a gun or attack an officer or flail and scream and [resist] arrest. So —

[APPELLANT]: Your Honor, I object to the testimony about going for a gun. This is not considering the conviction for attempting to take a weapon. Now, he is addressing it as if it is and that they should consider that she has been convicted of taking a weapon and I object to it, Your Honor.

[PROSECUTOR]: I would ask them to consider all the evidence from the guilt/innocence phase as well as this phase; which I think is what the law is.

THE COURT: The law is that you may consider any evidence admitted.

The prosecutor then resumed jury argument, describing appellant as "someone with a history of not being able to do what she is supposed to do."

To preserve a complaint for appellate review, a party must timely object and state the grounds for the objection with enough specificity to make the trial judge aware of the

complaint, unless the specific grounds were apparent from the context. Tex. R. App. P. 33.1(a)(1)(A); *see Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016). While it is not necessary to employ "magic words" or cite to specific statutes or rules, a party must convey the substance of the complaint to the trial court. *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011) (citing *Ford v. State,* 305 S.W.3d 530, 533 (Tex. Crim. App. 2009)); *see Vasquez v. State*, 483 S.W.3d 550, 554 (Tex. Crim. App. 2016). A "general or imprecise objection" will not preserve error "unless the legal basis for the objection is *obvious* to the court and to opposing counsel." *Vasquez*, 483 S.W.3d at 554 (quoting *Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006)). The record must make it clear that both the trial court and the opposing party understood the legal basis for the complaint. *Thomas v. State*, 408 S.W.3d 877, 884 (Tex. Crim. App. 2013); *see Pena*, 353 S.W.3d at 807.

While appellant alludes to "improper argument" in her briefing, we observe that her objection to the trial court did not communicate that she was complaining about improper jury argument by the prosecutor. Appellant objected to "testimony about going for a gun." She stated no legal basis for the objection, and the comments that followed her objection did not identify a legal basis for the objection. From the context of the exchange, it appears that the trial court and prosecutor understood appellant's complaint to relate to what evidence the jury could properly consider during punishment deliberations. On the basis of the record before us, we cannot conclude that the trial court necessarily understood the nature of appellant's objection to be an objection to improper jury argument. *See Vasquez*, 483 S.W.3d at 554.

Moreover, appellant's specific argument on appeal is that the trial court's statement in response to her trial objection misstated the law because article 37.07 of the Code of Criminal Procedure requires a jury to believe beyond a reasonable doubt that a defendant

6

committed an extraneous bad act before considering it when assessing punishment, *see* Tex. Code Crim. Proc. art. 37.07, § 3(a)(1) (allowing either party to offer "any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible"), and that the trial court's statement that the jury could consider "any evidence admitted" was a misstatement of the law that caused her "severe harm." However, appellant did not raise any complaint about the trial court's statement in the court below. Her only objection was to "the testimony about going for a gun." Because appellant did not object to the court's purported misstatement of the law at trial and, further, because her trial objection does not comport with her complaint on appeal, she failed to preserve for appellate review any error in the trial court's statement. *See* Tex. R. App. P. 33.1(a)(1); *Hallmark v. State*, 541 S.W.3d 167, 171 (Tex. Crim. App. 2017) (confirming that complaint on appeal must comport with trial objection to preserve error); *Thomas*, 505 S.W.3d at 924 ("If a trial objection does not comport with arguments on appeal, error has not been preserved.").

Preservation of error is a systemic requirement on appeal. *Darcy v. State*, 488 S.W.3d 325, 327 (Tex. Crim. App. 2016); *Bekendam v. State*, 441 S.W.3d 295, 299 (Tex. Crim. App. 2014). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Blackshear v. State*, 385 S.W.3d 589, 590 (Tex. Crim. App. 2012); *Wilson v. State*, 311 S.W.3d 452, 473–74 (Tex. Crim. App. 2010). Accordingly, we overrule appellant's first point of error due to lack of preservation.

**Reasonable-Doubt Instruction**

A trial court is statutorily obligated to instruct the jury on the "law applicable to the case." *See* Tex. Code Crim. Proc. art. 36.14; *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018). The trial court's duty to instruct the jury on the "law applicable to the case" exists even when defense counsel fails to object to inclusions or exclusions in the charge. *Mendez*, 545 S.W.3d at 552; *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013). The trial court is "ultimately responsible for the accuracy of the jury charge and accompanying instructions." *Mendez*, 545 S.W.3d at 552 (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)).

We review alleged jury-charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). The degree of harm required for reversal depends on whether the jury charge error was preserved in the trial court. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (setting forth procedure for appellate review of claim of jury charge error). If the charge error was not properly preserved by an objection or request for instruction, *see* Tex. Code Crim. Proc. arts. 36.14, 36.15, as is the case here, the error requires reversal only if it was "egregious" in that it "created such harm that the [defendant] was deprived of a fair and impartial trial." *Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019); *see Almanza*, 686 S.W.2d at 171.

In her second point of error, appellant contends that she was egregiously harmed by the trial court's omission of a reasonable-doubt burden-of-proof instruction concerning extraneous offenses in the punishment charge.

After a finding of guilt, at the punishment phase of trial, evidence may be offered by both the State and the defendant pursuant to section 3(a)(1) of article 37.07 of the Code of Criminal Procedure. The statute, which governs the admissibility of evidence at punishment in all non-capital cases, *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999), provides that:

> evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and . . . any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act[.]

Tex. Code Crim. Proc. art. 37.07, § 3(a)(1).

Although the statute does not expressly require a jury instruction concerning the burden of proof for extraneous offenses, the Court of Criminal Appeals has held that "such instruction is logically required if the jury is to consider extraneous-offense and bad-act evidence under the statutorily prescribed reasonable-doubt standard." *Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000). Therefore, the trial court must *sua sponte* charge the jury under section 3(a) when extraneous-act evidence is admitted in the punishment phase of trial. *Huizar*, 12 S.W.3d at 484; *see Delgado*, 235 S.W.3d at 252 (confirming that article 37.07 "is 'the law applicable' to all non-capital punishment proceedings" so trial court "must *sua sponte* instruct

9

the jury at the punishment phase concerning that law, including the fact that the State must prove any extraneous offenses beyond a reasonable doubt").

Appellant relies on *Huizar* to argue that the trial court was required to give a reasonable-doubt burden-of-proof instruction for extraneous offenses in the punishment charge in this case. She contends that the absence of such an instruction in the charge combined with the State's closing punishment argument (that, in a stressful situation appellant "is going to go for a gun") allowed the jury to erroneously consider evidence of appellant grabbing Officer Flores's holstered weapon when assessing appellant's punishment even though the jury had acquitted her of the offense of attempting to take a weapon from a peace officer. Appellant appears to suggest that the State's jury argument rendered the evidence that appellant grabbed the officer's holstered weapon, admitted during the guilt-innocence phase of trial, an extraneous matter under article 37.07, section 3(a) that entitled her to the required *sua sponte* reasonable-doubt instruction in the punishment charge under *Huizar*. We are unpersuaded by appellant's argument.[7]

First, appellant's argument misconstrues the jury's verdict. She assumes that the jury's not-guilty verdict represents a finding that appellant did not engage in the conduct underlying the indictment allegation or described by the officers. However, as the United States Supreme Court has explained:

---

[7] As an initial matter, we note that a trial court does not—and indeed could not—have a duty to instruct the jury in its punishment charge based on a jury argument that had yet to occur. An instruction on the burden of proof as to extraneous offenses, and whether such an instruction is required to be given by the trial court *sua sponte*, depends on the trial evidence. *See Huizar v. State*, 12 S.W.3d 479, 483–84 (Tex. Crim. App. 2000).

10

[a]n acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt. . . . [I]t is impossible to know exactly why a jury found a defendant not guilty on a certain charge. [A]n acquittal is not a finding of any fact. An acquittal can only be an acknowledgment that the government failed to prove an essential element of the offense beyond a reasonable doubt. Without specific jury findings, no one can logically or realistically draw any factual finding inferences. Thus, . . . the jury cannot be said to have 'necessarily rejected' any facts when it returns a general verdict of not guilty.

*United States v. Watts*, 519 U.S. 148, 155 (1997) (internal quotation marks and citation omitted).

The acquittal here simply indicates that the jury did not unanimously find that the evidence demonstrated beyond a reasonable doubt all the elements of the alleged offense, which included not only that appellant engaged in the conduct described by the officers but that she did so with the requisite culpable mental state—with the intent to harm Officer Flores[8]—and that the conduct amounted to an attempt to take the weapon "with force." *Cf. Chadwick v. State*, 277 S.W.3d 99, 107 (Tex. App.—Austin 2009), *aff'd*, 309 S.W.3d 558 (Tex. Crim. App. 2010) (concluding that "pulling on the gun, an act that would tend to dislodge the weapon and thus allow [the defendant] to take possession and control of it, constitutes attempt to take the weapon"). Further, the trial evidence was undisputed that, at the beginning of the altercation with the officers, in resisting her arrest, appellant grabbed Officer Flores's holstered firearm.[9]

---

[8] Subsequent to appellant's trial, Penal Code section 38.14(b) was amended and the language concerning the intent to harm the individual from whom the weapon was taken (or attempted to be taken) was removed from the statute, thereby eliminating the intent to harm as an element of the offense. *See* Act of May 22, 2019, 86th Leg., R.S., ch. 647, § 1, 2019 Tex. Gen. Laws —, — (current version at Tex. Penal Code § 38.14(b)).

[9] In closing argument, appellant's counsel conceded that appellant had "a hold on" the holstered weapon but argued the distinction between "one of those grabs [that] might end up on the holster," which he agreed was a "hand on, a hold . . . ahold of" the holstered firearm, and attempting to take the firearm away "with force."

The dispute involved whether she reached for it with one or both hands, did so with the intent to harm Officer Flores, and attempted to remove the firearm "with force."

Second, appellant's argument is premised on a misunderstanding of the burden of proof concerning punishment evidence. Regarding evidence of an extraneous offense or bad act admitted during the punishment phase of trial pursuant to article 37.07, the Court of Criminal Appeals has explained that

> the question at punishment is not whether the defendant has committed a crime, but instead what sentence should be assessed. Whereas the guilt-innocence stage requires the jury to find the defendant guilty beyond a reasonable doubt of each element of the offense, the punishment phase requires the jury only find that these prior acts are attributable to the defendant beyond a reasonable doubt.

*Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005). Thus, to prove an extraneous offense at punishment, the State is only required to prove beyond a reasonable doubt a defendant's involvement in the bad act: a finding of guilt for a crime is not required. *Id.*; *Gomez v. State*, 380 S.W.3d 830, 838–39 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *see Haley*, 173 S.W.3d at 515 (interpreting article 37.07 "to require the burden of proof to be applied to a defendant's involvement in the act itself, instead of the elements of a crime necessary for a finding of guilt"); *Hanson v. State*, 269 S.W.3d 130, 133–34 (Tex. App.—Amarillo 2008, no pet.) ("When an extraneous bad act is admitted for consideration during the punishment phase, the jury is not required to assess whether a statutory crime occurred; rather, its obligation is to determine, beyond a reasonable doubt, whether that appellant was involved in the bad act being offered as evidence."); *Terrell v. State*, No. 03-06-00250-CR, 2006 WL 3246504, at *4 (Tex. App.—Austin Nov. 10, 2006, no pet.) (mem. op., not designated for publication) (observing that article 37.07 "requires 'the burden of proof to be applied to a defendant's involvement in the act

12

itself, instead of the elements of a crime necessary for a finding of guilt'" so that "before the trier of fact can consider the evidence in assessing punishment, 'it must be satisfied beyond a reasonable doubt that the acts are *attributable* to the defendant'" (quoting *Haley*, 173 S.W.3d at 514–15)). Thus, the jury's failure to find the elements of the alleged offense of attempting to take a weapon from a peace officer beyond a reasonable doubt does not preclude the jury's consideration of appellant's act of grabbing Officer Flores's holstered firearm if the jury believed, beyond a reasonable doubt, that the act was attributable to appellant.

However, in this case, the "attributable to appellant" burden of proof does not apply to the evidence of appellant grabbing the officer's holstered firearm. As this Court has previously explained, "*Huizar* held that article 37.07, section 3(a) is statutorily prescribed law applicable to the case at the penalty stage of the trial. The express language is specifically restricted to the penalty stage of the trial." *Wright v. State*, 212 S.W.3d 768, 779 (Tex. App.— Austin 2006, pet. ref'd) (citing *Huizar*, 12 S.W.3d at 483); *see Delgado*, 235 S.W.3d at 252 ("Article 37.07 "is 'the law applicable' to all non-capital *punishment proceedings*." (emphasis added)). Here, the evidence that appellant grabbed the officer's holstered firearm was admitted during the guilt-innocence phase of trial.[10] It was not offered or admitted into evidence under article 37.07, section 3(a) during the punishment phase of trial. Moreover, the record reflects that it was not evidence of an *extraneous* offense or bad act.

"An extraneous offense is any act of misconduct, whether resulting in prosecution or not, that is not shown in the charging papers." *Manning v. State*, 114 S.W.3d 922, 926 (Tex.

---

[10] At the guilt-innocence phase of trial, Officer Flores testified that appellant "immediately lunged forward with both hands and grabbed my duty-issued holster, which had my pistol, and began yanking on it." Officer Green said that appellant "lunged at Officer Flores'[s] service weapon and tried to unholster it."

Crim. App. 2003) (citing *Rankin v. State*, 953 S.W.2d 740, 741 (Tex. Crim. App. 1996)); *accord Rodriguez v. State*, 31 S.W.3d 772, 775 (Tex. App.—Austin 2000), *aff'd*, 104 S.W.3d 87 (Tex. Crim. App. 2003). "It is an offense that is 'extra, beyond, or foreign to the offense for which the party is on trial.'" *Manning*, 114 S.W.3d at 926–27 (quoting *Powell v. State*, 137 S.W.3d 84, 89 (Tex. App.—Tyler 2000), *rev'd on other grounds*, 63 S.W.3d 435 (Tex. Crim. App. 2001)). In this case, the State charged appellant in a two-count indictment. Count Two alleged that appellant "did then and there, with the intention of harming Frank Flores, intentionally and knowingly and with force attempt to take a firearm from Frank Flores, a peace officer." So the evidence of appellant grabbing Officer Flores's holstered weapon was not an extraneous act—it was evidence of the charged offense of attempting to take a weapon from a peace officer. *Cf. id.* at 927 ("If it is an offense for which the accused had no notice, based on the charging instrument, then it is extraneous."); *see also King v. State*, No. 14-02-00204-CR, 2003 WL 1884295, at *2 (Tex. App.—Houston [14th Dist.] Apr. 17, 2003, no pet.) (mem. op., not designated for publication) (concluding that, in consolidated case, evidence of misconduct charged in one indictment is not evidence of extraneous misconduct as to any of indictments in consolidated case).

Furthermore, the evidence of appellant grabbing Officer Flores's holstered firearm constituted "same transaction contextual evidence." "'Same transaction contextual evidence'" refers to those events and circumstances that are intertwined, inseparable parts of an event that, if viewed in isolation, would make no sense at all." *Delgado*, 235 S.W.3d at 253; *see Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (explaining that evidence of another crime, wrong, or act is same transaction contextual evidence "where 'several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal

14

transaction, and full proof by testimony . . . of any one of them cannot be given without showing the others'" (quoting *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000))). Such evidence gives the jury information "essential to understanding the context and circumstances of events which, although legally separate offenses, are blended or interwoven." *Camacho v. State*, 864 S.W.2d 524, 534–35 (Tex. Crim. App. 1993); *see Devoe*, 354 S.W.3d at 469 ("The jury is entitled to know all relevant surrounding facts and circumstances of the charged offense.").

Because same transaction contextual evidence serves to explain the circumstances surrounding the offense, it falls within the "circumstances of the offense" language of article 37.07, section 3(a)(1) rather than the "other evidence of an extraneous crime or bad act" language of the statutory provision. *Screws v. State*, — S.W.3d. —, No. 11-18-00183-CR, 2020 WL 3980192, at *5 (Tex. App.—Eastland July 9, 2020, no pet.); *Harper v. State*, No. 05-15-01211-CR, 2017 WL 541537, at *1–3 (Tex. App.—Dallas Feb. 10, 2017, no pet.) (mem. op., not designated for publication); *cf. Worthy v. State*, 312 S.W.3d 34, 39 (Tex. Crim. App. 2010) (recognizing that "'same-transaction contextual evidence' is intrinsic to the offense; it is not 'an extraneous crime or bad act' to which [notice requirements of] Article 37.07, § 3(g), explicitly refers"). "By its terms, section 3(a)(1)'s reasonable-doubt standard applies only to extraneous offenses and does not apply to evidence that arises in the 'circumstances of the offense for which he is being tried.'" *Lopez v. State*, 515 S.W.3d 547, 552 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (citing Tex. Code Crim. Proc. art. 37.07, § 3(a)); *see Bluitt v. State*, 137 S.W.3d 51, 54 (Tex. Crim. App. 2004) (clarifying which types of article 37.07 punishment evidence require reasonable-doubt instruction and observing that only extraneous offenses and bad acts have articulated burden of proof); *Donald v. State*, 543 S.W.3d 466, 483–84 (Tex.

15

App.—Houston [14th Dist.] 2018, no pet.) ("The only type of [punishment] evidence that must be proved beyond a reasonable doubt is an unadjudicated offense or bad act.").

Consequently, same transaction contextual evidence admitted or used during the punishment phase does not require a reasonable-doubt instruction under section 3(a)(1) of article 37.07 nor does the trial court err in failing to give such an instruction *sua sponte*. *See Lopez*, 515 S.W.3d at 552 (holding that reasonable-doubt instruction is not required for "same-transaction contextual evidence" admitted during punishment phase); *Harper*, 2017 WL 541537, at *1–3 (same); *Atkinson v. State*, 404 S.W.3d 567, 575 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (concluding that appellant was not entitled to reasonable-doubt instruction during punishment phase for same transaction contextual evidence admitted during guilt-innocence phase); *Glockzin v. State*, 220 S.W.3d 140, 151–52 (Tex. App.—Waco 2007, pet. ref'd) (same); *Garza v. State*, 2 S.W.3d 331, 335 (Tex. App.—San Antonio 1999, pet. ref'd) (concluding that, since same transaction contextual evidence is offered "simply to explain the circumstances of the offense," reasonable-doubt instruction at punishment phase of trial is not required).

In this case, the evidence of appellant grabbing Officer Flores's holstered firearm, although conduct forming the basis for a legally separate offense, was conduct that was blended or interwoven with the charged offense of assault on a public servant. Therefore, such evidence was same transaction contextual evidence and was not subject to the requirement of reasonable-doubt instruction of article 37.07 under *Huizar*. *See Lopez*, 515 S.W.3d at 552–53; *see also Bluitt*, 137 S.W.3d at 54; *see e.g.*, *Martinez v. State*, No. 01-09-00724-CR, 2010 WL 724524, at *4 (Tex. App.—Houston [1st Dist.] March 4, 2010, pet. ref'd) (mem. op., not designated for publication) (concluding that guilt-innocence evidence of appellant's bad acts during course of aggravated robbery was same transaction contextual evidence; thus, no

16

reasonable-doubt instruction was required at punishment); *Duchane v. State*, No. 05-00-01141-CR, 2002 WL 232851, at *5 (Tex. App.—Dallas Feb. 8, 2002, no pet.) (mem. op., not designated for publication) (holding that "same transaction contextual evidence" is not subject to reasonable-doubt charge-instruction requirement of article 37.07, section 3(a), so trial court's failure to *sua sponte* include instruction in punishment charge was not error).

For the above reasons, we conclude that the record does not support appellant's contention that an instruction on the burden of proof for extraneous offenses was required in this case.[11]   Thus, the trial court did not err by not including *sua sponte* the reasonable-doubt instruction in the punishment charge.  Finding no error in the punishment charge, we overrule appellant's second point of error.[12]

---

[11]   We also note that, for the same reasons, the State's punishment argument that appellant was "going to go for a gun" was proper jury argument, and the trial court's response to appellant's objection during the prosecutor's punishment argument was not a misstatement of the law.  *See Milton v. State*, 572 S.W.3d 234, 239 (Tex. Crim. App. 2019) (explaining that "proper jury argument generally falls within one of four areas:  (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to an argument of opposing counsel, and (4) plea for law enforcement"); *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988) (recognizing that "[c]ounsel is allowed wide latitude without limitation in drawing inferences from the evidence so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith"); *see also Alexander v. State*, 740 S.W.2d 749, 761 (Tex. Crim. App. 1987) ("It is well settled that in assessing punishment the jury may consider all of the evidence adduced at the guilt stage of the trial."); *Wright v. State*, 212 S.W.3d 768, 776 (Tex. App.—Austin 2006, pet. ref'd) (observing that evidence from guilt phase of trial is "automatically" before jury at penalty phase by operation of law, and jury may consider all evidence adduced at guilt-innocence phase in assessing defendant's punishment).

[12] Because we conclude that no error exists in the punishment charge, we need not reach appellant's claim that she suffered "egregious harm." *See Celis v. State*, 416 S.W.3d 419, 423 (Tex. Crim. App. 2013); *Barrios v. State*, 283 S.W.3d 348, 353 (Tex. Crim. App. 2009).

**CONCLUSION**

Having concluded that appellant failed to preserve for appellate review her complaint about the trial court's purportedly erroneous statement when responding to appellant's objection during the prosecutor's jury argument and that the trial court did not err in failing to include *sua sponte* a reasonable-doubt instruction on the burden of proof for extraneous offenses in the punishment charge, we affirm the trial court's judgment of conviction.

_____

Edward Smith, Justice

Before Chief Justice Rose, Justices Triana and Smith

Affirmed

Filed:   September 30, 2020

Do Not Publish